NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Brentwood Probate Division
No. 2021-0138


IN RE THE OMEGA TRUST


Argued: November 18, 2021
Opinion Issued: May 12, 2022

Casassa Law Office, of Hampton (Lisa J. Bellanti on the brief and orally), for the petitioner.


Barradale, O'Connell, Newkirk & Dwyer, P.A., of Bedford (Pamela J. Newkirk on the brief and orally), for the respondent-trustee.


Shaheen & Gordon, P.A., of Concord (Benjamin T. Siracusa Hillman and Stephanie K. Annunziata on the brief, and Benjamin T. Siracusa Hillman orally), for the respondent-special trustee.

HANTZ MARCONI, J. The petitioner, David J. Apostoloff, appeals an order of the Circuit Court (Weaver, J.) dismissing his petition to validate a purported amendment to the Omega Trust. He contends that the court erred when it dismissed his petition by finding that the grantor did not substantially

comply with the terms of the trust regarding amendments, and that there was not clear and convincing evidence that the grantor intended to amend his trust. For the reasons set forth below, we reverse and remand.

The petitioner alleges the following facts, which we accept as true for purposes of this appeal. See Elter-Nodvin v. Nodvin, 163 N.H. 678, 679 (2012). The Omega Trust was established by executed trust agreement on December 30, 2005, by the grantor, Mark Frank Douglas. The Omega Trust was twice amended, once in June 2015 and once in September 2015.

The relevant portions of the Omega Trust, regarding amendments and their execution, provide:

> [Paragraph] 19.    AMENDMENT AND REVOCATION.  The Grantor reserves the right at any time or from time to time without the consent of any person and without notice to any person other than the Trustee to revoke or modify the trust hereby created, in whole or in part, to change the beneficiaries hereof, or to withdraw the whole or any part of the trust estate by filing notice of such revocation, modification, change, or withdrawal with the Trustee; provided, however, that the terms of this agreement may not be modified by the Grantor in such manner as to increase the obligations or alter the rates of the commissions of the Trustee without its written consent.
>
> . . . .
>
> [Paragraph] 22.    EXECUTION.  This trust agreement, and any amendments hereto, shall be effective when executed by the Grantor, notwithstanding that the signature of the Trustee is provided for, the Trustee's signature being intended to denote the acceptance of the Trustee to serve in that capacity only.
> This trust agreement may be executed in any number of counterparts with the same effect as if all of the parties had signed the same document.  All counterparts shall be construed together and shall constitute one agreement.

In July 2016, the grantor informed his Trust Protector[1] that he was in poor health and asked her for assistance "in preparing the Third Amendment" to the Omega Trust.  He informed her "of the changes that he planned to make and she assisted him in drafting an email to his attorney . . . to make the

---

[1] "A trust protector . . . is any person, other than a trustee, who under the terms of the trust, an agreement of the qualified beneficiaries, or a court order has a power or duty with respect to a trust, including, without limitation, one or more" of the 13 enumerated powers in RSA 564-B:12-1201 (2019).

changes to the trust." The grantor also informed the trustee "that he was making changes to [the Omega] Trust and he was contacting his attorney to amend" the same.

In August, the grantor emailed his attorney about updating his estate plan documents, including "his desire to amend the [Omega] Trust, with specific instructions on what he wished to do," and informed the attorney of his "significant health issues." The grantor's instructions provided for a number of changes, including that "he wished to add successor trustees and successor trust protectors," and to include four additional beneficiaries. On August 12, his attorney responded "with some questions about the changes requested." On August 16, the attorney sent an email to the grantor that "summarized and confirmed the current actions to be taken regarding [the grantor's] estate plan," and indicated that his law firm was "working on the revised documents now." In this email, the attorney explained that the firm "will prepare an Amendment to the Omega Trust," and noted the changes that the trust would reflect including, among other things, the distribution of tangible property and trust shares. The email summary also provided for changes to some of the grantor's other trusts. The grantor replied: "Very nice job, there are just a few suggested changes as noted below." That night, the attorney responded that the firm "will prepare the revised documents accordingly." On August 18, the grantor died without having signed the Third Amendment.

In August 2019, the petitioner sought a declaration by the court that the series of emails between the grantor and his attorney constituted a valid third amendment to the Omega Trust. The special trustee of the Omega Trust[2] filed a motion to dismiss the petition; the petitioner objected. The court found that the "exchange of the e-mails did not substantially comply with the terms of the [Omega] Trust." The court based its finding, in part, on "the history of how the Trust was amended in the past and the language of the Trust." The history and language of the trust, the court found, showed that the grantor "understood that documents amending the [Omega] Trust must be signed" and that "notice to the trustee included having the trustee acknowledge the receipt of the amendment."

The court also considered the "overall nature" of the emails, which it explained involved instructions to revise "an entire estate plan," not simply the Omega Trust. Noting that the attorney's response indicated that documents "will" be drafted, the court found it was "clear that [the grantor] expected that documents were to be prepared and forwarded to him for final review and signature." The court, therefore, found that because the Omega Trust

---

[2] At the time of the petition, the trustee of the Omega Trust believed he had a conflict of interest given the changes to the beneficial interests of the Omega Trust, under the purported amendment. The court appointed a special trustee to represent the interests of the beneficiaries.

"required all amendments to be executed, the failure to execute any amendment require[d] a finding that the petition must be dismissed."

The court further found that the petitioner had not shown "by clear and convincing evidence that [the grantor] intended the e-mails to be the amendment to his trust." "Indeed," the court observed, the grantor "was still making corrections and waiting to see the final version from his attorney when he died." Specifically, the court noted that the grantor's "last e-mail does not indicate any intention that the amendment was completed at that point." The court dismissed the petition; the petitioner appealed.

In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in the petitioner's pleadings are reasonably susceptible of a construction that would permit recovery. Automated Transactions, LLC v. Am. Bankers Ass'n, 172 N.H. 528, 532 (2019). We assume that the facts set forth in the petitioner's pleadings are true and construe all reasonable inferences in the light most favorable to the petitioner. See id. We need not assume, however, the truth of statements in the pleadings that are merely conclusions of law. Elter-Nodvin, 163 N.H. at 680. We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations do not constitute a basis for legal relief, we must uphold the granting of the motion. Id. In conducting this inquiry, we may also consider documents attached to the pleadings, documents the authenticity of which are not disputed by the parties, official public records, or documents sufficiently referred to in the petition. See Automated Transactions, LLC, 172 N.H. at 532.

On appeal, the petitioner contends that the trial court erred when it dismissed his petition to validate the Third Amendment because the grantor "clearly and unequivocally sought to amend the [Omega] Trust." He maintains that the email exchange between the grantor and his attorney, "instruct[ing] his attorney . . . to prepare a Third Amendment and Restatement reflect[s] [the grantor's] intent." Resolving this appeal requires that we interpret provisions of the New Hampshire version of the Uniform Trust Code (UTC), see RSA ch. 564-B (2019 & Supp. 2021). To do so, we rely upon our ordinary, well-established rules of statutory construction. Hodges v. Johnson, 173 N.H. 595, 604 (2020). Under those rules, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. See id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. We also rely upon the official comments to the UTC. Id.

RSA 564-B:6-602 governs the revocation or amendment of a revocable trust. Paragraph (c) provides that a settlor may revoke or amend a revocable trust by two methods: first, under (c)(1), "substantial compliance with a method provided in the terms of the trust," or, second, under (c)(2), by "any other

method manifesting clear and convincing evidence of the settlor's intent if the terms of the trust do not provide a method or do not expressly prohibit methods other than methods provided in the terms of the trust." RSA 564-B:6-602(c). We need not decide, here, whether the facts, as pled, constitute "substantial compliance" with the trust terms because we conclude that the petitioner adequately pled an alternative method of amendment under subparagraph (c)(2).

Here, the terms of the Omega Trust provide, in pertinent part, that the grantor may amend the trust "at any time or from time to time without the consent of any person and without notice to any person other than the Trustee . . . by filing notice of such revocation, modification, change, or withdrawal with the Trustee," and that such an amendment "shall be effective when executed by the Grantor." Because the terms of the Omega Trust provide a method for amendment, we first consider whether the trust "expressly prohibit[s] methods other than" that provided by the trust terms. RSA 564-B:6-602(c)(2).

Both the trustee and the special trustee maintain that the method of amendment provided in the terms of the Omega Trust is exclusive. The trustee contends that the no-contest clause "precludes other methods of amendment," and thereby "precludes any claim of an amendment pursuant to RSA 564-B:6-602(c)(2)." Similarly, the special trustee argues that the use of the word "shall" in paragraph 22, the execution paragraph, "identifies the execution of a document as the exclusive method of amendment." According to the special trustee, because the word "shall" is used to "express a command," the grantor's use of the word "must be interpreted in the context of the Trust as a whole" and in "light of all the circumstances and other competent evidence of the settlor's intent." (Quotations omitted.) We are not persuaded by either argument.

The commentary to the UTC explains that the code "tries to effectuate the settlor's intent to the maximum extent possible . . . ." Unif. Trust Code § 602 cmt. at 220 (2018). "[T]o honor the settlor's intent," paragraph (c) "generally honors a settlor's clear expression of intent even if inconsistent with stated formalities in the terms of the trust." Id. Even absent substantial compliance with the trust's terms, a settlor may still revoke or amend a revocable trust by "any other method manifesting clear and convincing evidence of the settlor's intent." Id. (explaining that, although amendment or revocation of a trust "will ordinarily . . . be accomplished by signing and delivering a written document to the trustee, other methods, such as a physical act or an oral statement coupled with a withdrawal of the property, might also demonstrate the necessary intent"). "Only if the method specified in the terms of the trust is made exclusive is the use of other methods prohibited." Id.

Similarly, the Restatement (Third) of Trusts provides that if the terms of the trust provide a method for the exercise of a power of revocation or

amendment, but they do not make that method exclusive, "the settlor's power can be exercised <u>either</u> in the specified manner," or "in any way that provides clear and convincing evidence of the settlor's intention to do so." <u>Restatement (Third) of Trusts</u> § 63 cmts. h, i, at 447-48 (2003). As an example of an exclusive amendment provision, the <u>Restatement (Third) of Trusts</u> provides, "if a settlor reserves the power to revoke the trust '<u>only</u> by a notice in writing delivered to the trustee,' revocation requires the delivery of such a notice to the trustee." <u>Id</u>. cmt. i at 447 (emphasis added). From this guidance, we conclude that only if the method specified in the terms of the trust is made exclusive does the trust "expressly prohibit methods other than methods provided." RSA 564-B:6-602(c)(2).

Here, nothing in the terms of the Omega Trust purports to make the method of amendment provided exclusive. The method provided in the trust terms, set forth in paragraphs 19 and 22, provides that the grantor may revoke or amend the trust "in whole or in part . . . by filing notice of such revocation, modification, change, or withdrawal with the Trustee," which "shall be effective when executed by the Grantor." Nothing in this language prohibits the use of other methods to amend the trust. Accordingly, the power to amend the Omega Trust could be exercised by any method, manifesting clear and convincing evidence "of the settlor's intention to do so." <u>Restatement (Third) of Trusts</u>, <u>supra</u> § 63 cmt. h at 447; <u>see</u> RSA 564-B:6-602(c)(2). We conclude that the method at issue here — an expression of intent to amend by email — is capable of manifesting, by clear and convincing evidence, the settlor's intent. <u>See</u> RSA 564-B:6-602(c)(2). Because the settlor's intent "is a question of fact to be determined by competent evidence and not by rules of law," <u>King v. Onthank</u>, 152 N.H. 16, 18 (2005), we leave the question of the settlor's intent to the trial court to determine in the first instance.

In sum, taking all of the facts alleged in the petition as true, and applying them against the applicable law, we conclude that the allegations constitute a basis for legal relief. <u>See</u> <u>Elter-Nodvin</u>, 163 N.H. at 680. Thus, the petitioner has sufficiently pled his case to survive a motion to dismiss. Accordingly, we reverse the order of the circuit court granting the special trustee's motion to dismiss. <u>See</u> <u>id</u>.

<u>Reversed and remanded</u>.


MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

6